546 S.E.2d 647

**Patricia L. EDGE and others similarly situated, Plaintiffs,**

v.

**STATE FARM INSURANCE COMPANY, and Horace Mann Insurance Company, Defendants.**

**No. 25290.**

Supreme Court of South Carolina.

Heard April 3, 2001.

Decided May 14, 2001.

A. Camden Lewis, of Lewis, Babcock & Hawkins, L.L.P.; Richard A. Harpootlian, and Robert G. Rikard, of the Law Offices of Richard A. Harpootlian, P.A.; and Michael Sullivan, of Michael Sullivan, P.A., Columbia, for plaintiffs.

James C. Gray, Jr., B. Rush Smith, III, William C. Wood, Jr., and Thad H. Westbrook, of Nelson Mullins Riley & Scarborough, L.L.P., Columbia, for defendant State Farm Insurance Company.

Thomas C. Salane, of Turner, Padget, Graham & Laney, P.A., Columbia, for defendant Horace Mann Insurance Company.

TOAL, Chief Justice:

We agreed to answer the following question certified by the United States District Court for the District of South Carolina:

> Must a person, who claims her insurer assessed unauthorized surcharge points, exhaust the administrative remedies available under S.C. Reg. 69–13.1(IV) and S.C.Code Ann. § 38–3–210 before filing a civil action?

## FACTS

In 1996, plaintiff Patricia Edge was involved in a two car accident with Ann Shull. Both drivers were insured by defendant State Farm Insurance Company. A ticket was issued to Shull at the scene of the accident for disregarding a traffic signal.

After an internal investigation of the accident, State Farm decided Edge was predominantly at fault for the collision. State Farm paid damages to Shull from Edge's policy. State Farm assigned two surcharge points [1] to Edge pursuant to 25A S.C.Code Ann. Reg. 69–13.1(III)(H)(4) (Supp.2000), because it had paid Shull from Edge's policy.

In October 1996, Shull either pled guilty to or forfeited bond on the charge of disregarding a traffic signal.[2] Approximately

---

1. A surcharge point is a penalty for moving violations, including automobile accidents. If an insured receives a surcharge point, he loses a twenty percent safe driver discount on insurance premiums and a dollar penalty is assigned for each additional point. See 25A S.C.Code Ann. Reg. 69–13.1(II)(E) (Supp.2000).

2. Edge later sued Shull in Magistrate's Court for damages resulting from the accident. During the jury trial held in April 1998, Shull

one year later, despite Shull's plea or forfeit, State Farm notified Edge it intended to increase her premium by more than $600. State Farm advised Edge it raised her premium because its investigation found Edge to be at fault for the accident.

Instead of paying the higher premium, Edge applied for insurance with Horace Mann Insurance Company. Although she was initially quoted a lower premium than State Farm's quote, Horace Mann later notified her that State Farm reported her accident to the Comprehensive Underwriting Exchange, thus she would be assessed two surcharge points and her premiums would be substantially higher. Edge paid the increased premium for the Horace Mann policy. Horace Mann later removed the surcharge and lowered the premium rate after Edge provided documentation that Shull had been convicted of a moving violation in connection with the accident. Edge renewed her policy at the lower rate.

Edge filed this civil action against State Farm and Horace Mann, alleging both companies violated portions of 25A S.C.Code Ann. Reg. 69–13.1(III) and S.C.Code Ann. § 38–73–455 (repealed effective March 1, 1999) which prohibit the assessment of surcharge points if the policyholder was reimbursed by or obtained a judgment against the other driver or where the other driver, not the policyholder, was convicted of a moving traffic violation in connection with the accident.

Horace Mann filed a Motion to Dismiss and/or for Summary Judgment based in part on Edge's failure to exhaust administrative remedies pursuant to 25A S.C.Code Ann. Reg. 69–13.1(IV) (Supp.2000). Although State Farm did not move to dismiss on this ground, State Farm raised failure to exhaust as a defense in its answer.

## ISSUE

Was Edge required to appeal the assessment of surcharge points to the Chief Insurance Commissioner before pursuing this action?

---

admitted she caused the accident, and the jury returned a verdict of $5,000 in Edge's favor.

## LAW/ANALYSIS

■ South Carolina Reg. 69–13.1(IV), states the following:

A. Any insured aggrieved by an insurer's application of the Plan or assignment of points *may appeal to the Chief Insurance Commissioner* for a review thereof. Unless otherwise ordered by the Commissioner, investigation and review of an appeal under this Section shall be conducted informally and without a hearing.

. . .

C. Any decision of the Commissioner will be made in writing, and a copy thereof will be mailed to the insured and the insurer. *Any such decision may be appealed by either party in accordance with South Carolina Code Section 38– 3–210 (1976),*[3] *as amended.*

(emphasis added).

The words of a regulation must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the regulation's operation. *Byerly v. Connor,* 307 S.C. 441, 415 S.E.2d 796 (1992).

Pursuant to the plain and ordinary meaning of the regulation, an aggrieved party *may* appeal to the Commissioner; however, nothing prevents the aggrieved party from bypassing an administrative hearing before the Commissioner and bringing an action in the circuit court as Edge did in this matter. By using the word "may" instead of "shall," the regulation allows, but does not *require,* an aggrieved party to appeal to the Commissioner. *See Rice v. Multimedia, Inc.,* 318 S.C. 95, 456 S.E.2d 381 (1995) (use of word "may" signifies permission and generally means the action spoken of is optional or discretionary); *State v. Wilson,* 274 S.C. 352, 264 S.E.2d 414 (1980) (same).[4]

---

**3.** S.C.Code Ann. § 38–3–210 (Supp.2000) provides:

Any order or decision made, issued, or executed by the director [of the Department of Insurance] or his designee is subject to judicial review in accordance with the appellate procedures of the South Carolina Administrative Law Judge Division, as provided by law. An appeal from an order or decision under this section must be heard in the Administrative Law Judge Division, as provided by law. . . .

**4.** While State Farm argues the cite to § 38–3–210 in Reg. 69– 13.1(IV)(C) indicates that administrative review is mandatory, this

There is nothing in the regulation to indicate an intent on the part of the regulation's promulgator, that is, the Department of Insurance,[5] to force an aggrieved party to pursue an administrative remedy. This Court considered a similar defense claim in *Waites v. South Carolina Windstorm and Hail Underwriting Ass'n*, 279 S.C. 362, 307 S.E.2d 223 (1983). In *Waites*, the following language from S.C.Code Ann. § 38–39–110 (1976) (revised as § 38–75–410 (Supp.2000)) was at issue: "Any person insured pursuant to this chapter ... who may be aggrieved by an act, ruling, or decision of the Association, *may*, within thirty days after such ruling, *appeal to the Commission*." (Emphasis added). We held the statute did not require insureds to pursue an administrative remedy since the legislature had used the word "may" in the statute, which is a permissive and not a mandatory term. *Waites*, 279 S.C. at 364–365, 307 S.E.2d at 224.[6]

We therefore answer the certified question in the following manner: a person bringing a tort action arising out of an insurer's assessment of unauthorized surcharge points is not required to exhaust the administrative remedies available

___

section of the regulation simply informs an aggrieved party about the procedure for appealing a decision by the Commissioner. Here, there was no decision by the Commissioner.

5. The Department of Insurance is allowed to promulgate regulations that implement or prescribe law or policy or practice requirements of the Department of Insurance. *See* S.C.Code Ann. § 1–23–10 et seq.

6. We note *Stanley v. Gary*, 237 S.C. 237, 116 S.E.2d 843 (1960), is not dispositive here. In *Stanley*, the plaintiffs brought an action to enjoin the principal of a high school from coercing and intimidating pupils and to enjoin the school board from employing the principal. The *Stanley* court held the plaintiffs would have to exhaust their administrative remedies before the court could entertain an injunction action against the principal and the school board. The *Stanley* court made this finding despite a statute which stated that any person aggrieved by any decision of the board of trustees *may appeal* to the county board of education. The rationale in *Stanley*, however, was based largely on the county board's exclusive authority over "matters of local controversy." We find *Stanley* is limited to the particular school laws at issue in that case.

under Reg. 69–13.1(IV) and § 38–3–210 before filing a civil action.

**QUESTION ANSWERED.**

WALLER and BURNETT, JJ., and Acting Justices CAROL CONNOR and GEORGE T. GREGORY, Jr., concur.