23597

Marvin BYERLY, Administrator of the Estate of Karl A. Byerly, deceased, Appellant v. Ronald E. CONNOR, Carolina Heating and Electric, and The South Carolina Public Service Authority, by and through their wholly owned State Utility, Santee Cooper, Defendants of whom, The South Carolina Public Service Authority, by and through their wholly owned State Utility, Santee Cooper, is Respondent.

(415 S.E. (2d) 796)

Supreme Court

*John E. Miles*, Sumter, *for appellant.*

*George C. James*, of *Richardson, James & Player*, Sumter, *for respondent.*

Heard Feb. 4, 1992.

Decided Mar. 16, 1992.

HARWELL, Chief Justice:

This is a wrongful death action. The dispositive issue is whether respondent South Carolina Public Service Authority, by and through its wholly owned state utility, Santee Cooper (Santee Cooper), owed a duty to warn of a latent hazardous

condition which it did not create and about which it had no knowledge. The trial judge held that it did not. We affirm.

## I. FACTS

On June 20, 1987, Karl A. Byerly, the son of appellant Marvin Byerly, was electrocuted after he dived from a houseboat into the waters of Lake Marion. The houseboat on which the decedent was a guest was moored to a dock constructed and maintained by J & J Marina, Inc., a lessee of Santee Cooper. The electrical current which killed Byerly was emitted either from a defectively wired outlet on the dock to which the houseboat was moored, or from a defect in the wiring of the houseboat itself. Appellant brought an action alleging that the defendants committed various acts of negligence which proximately caused Karl A. Byerly's death. The trial judge granted summary judgment in favor of Santee Cooper on the ground that, among other things, Santee Cooper had no duty to warn the decedent that a latent hazardous condition existed at J & J Marina.

## II. DISCUSSION

A legal duty is that which the law requires to be done or forborne with respect to a particular individual or the public at large. *South Carolina Electric & Gas Co. v. Utilities Construction Co.*, 244 S.C. 79, 135 S.E. (2d) 613 (1964). Without a violation of such a legal duty, there is no negligence. *Id.*

An owner of land possesses a general duty to warn others of latent hazardous conditions on his land. This duty arises from the owner's superior knowledge of conditions on the premises within his control. *See Dunbar v. Charleston & W.C. Ry. Co.*, 211 S.C. 209, 44 S.E. (2d) 314 (1947). However, when land is occupied by a lessee, as in this case, the law of property regards the lease as equivalent to a sale of the premises for the term of the lease. In the absence of an agreement to the contrary, the lessor surrenders possession and control of the land to the lessee. After the premises are surrendered in good condition, the lessor typically is not responsible for hazardous conditions which thereafter develop or are created by the lessee. W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* 434 (5th

ed. 1984). *See also Young v. Morrisey*, 285 S.C. 236, 329 S.E. (2d) 426 (1985) (landlord owes no duty to maintain leased premises in a safe condition).[1]

Appellant urges that, despite these general rules, Santee Cooper possessed a special duty to discover and to warn of the latent hazardous condition existing at J & J Marina. Appellant contends that this special duty stems from a federal regulation and from Santee Cooper's undertaking to inspect the dock at J & J Marina. We disagree.

### A. DUTY ARISING FROM 18 C.F.R. § 12.43 (1990)

An affirmative legal duty to act can be created by statute, contract, relationship, status, property interest, or other special circumstances. *Rayfield v. South Carolina Department of Corrections*, 297 S.C. 95, 374 S.E. (2d) 910 (Ct. App. 1988). Appellant asserts that Santee Cooper had a duty to discover and warn of the latent hazardous condition at J & J Marina as a consequence of obligations imposed by the licensed granted to Santee Cooper by the Federal Energy Commission.[2] Under the license, Santee Cooper must take all reasonable precautions to ensure that "any power or communication line or gas pipeline that is located over, under, or in project waters does not obstruct navigation for recreational or commercial purposes or otherwise endanger public safety." 18 C.F.R. § 12.43 (1991). Appellant claims that the electrical outlet and wiring at J & J Marina are "power lines," and that Santee Cooper breached its duty to discover and warn of a latent hazardous condition by failing to ensure that the electrical outlet and wiring at the marina did not endanger public safety.

The words of a regulation must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the regulation's operation. *Cf. Bryant v. City of Charleston*, 295 S.C. 408, 368 S.E. (2d) 899 (1988). When read in context, it is apparent that

---

[1] Unlike *Morrisey*, this case involves a commercial lease. The common law has been abrogated as to residential property. S.C. Code Ann. §§ 27-40-10 to -940 (1991).

[2] Santee Cooper maintains Santee Cooper Basin subject to a license which requires Santee Cooper to abide by regulations promulgated by the EPA, Corps of Engineers, and other state and federal agencies.

the term "power line" utilized in section 12.43 refers to high voltage transmission or distribution lines. This definition is consistent with the use of the phrase "power line" in other sections of the Code of Federal Regulations. *See, e.g.,* 7 C.F.R. § 1794.31 (1991); 16 C.F.R. §§ 1204.1, 1204.2, 1204.6 (1991); 25 C.F.R. § 169.27 (1991). Clearly, the purpose of 18 C.F.R. § 12.43 (1991) is to ensure that high voltage transmission or distribution lines do not present a safety hazard to navigation or to the public. We find that the trial judge did not err in holding that 18 C.F.R. § 12.43 (1991) created no duty on the part of Santee Cooper to inspect the electrical outlet and wiring on the dock at J & J Marina, and to discover and warn decedent of the latent hazardous condition existing there.

### B. DUTY ARISING FROM UNDERTAKING

At common law, where there is no duty to act, but an act is voluntarily undertaken, the actor assumes a duty to use due care. *Sherer v. James,* 290 S.C. 404, 351 S.E. (2d) 148 (1986). Appellant contends that Santee Cooper owed a duty to discover and warn of the latent hazardous electrical condition because it undertook to inspect the dock at J & J Marina.

A land agent for Santee Cooper testified that he conducts yearly inspections of docks and piers solely for the purpose of ensuring that the docks and piers conform to structural requirements of permits issued by Santee Cooper. Thus, Santee Cooper has undertaken a limited duty to use due care to discover structural nonconformity with permits. We find that the trial judge did not err in holding that Santee Cooper's undertaking to inspect for structural conformity did not include a duty to inspect for a latent hazardous electrical condition at J & J Marina.

In sum, we discern, under the facts of this case, no duty on the part of Santee Cooper to have discovered and warned of the latent hazardous condition at J & J Marina. Summary judgment can be granted when plain, palpable, and indisputable facts exist on which reasonable minds cannot differ. *Williams v. Chesterfield Lumber Co.,* 267 S.C. 607, 230 S.E. (2d) 447 (1976). We hold that the trial judge did not err in granting summary judgment to Santee Cooper on the ground that Santee Cooper had no duty to discover and

warn of the latent hazardous condition at J & J Marina. Because we find that Santee Cooper owed no duty to the decedent, we need not reach appellant's remaining exception regarding whether Santee Cooper was entitled to immunity under various provisions of the South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-10 to -190 (Supp. 1991). The order of the trial judge granting summary judgment in favor of Santee Cooper is

Affirmed.

CHANDLER, FINNEY, TOAL, JJ., and Acting Associate Justice GARDNER, concur.